OLIVER v. FT. SMITH LIGHT & TRACTION COMPANY.

Opinion delivered January 25, 1909.

1. APPEAL AND ERROR—SUFFICIENCY OF ABSTRACT.—Rule 9, requiring appellant to file "an abstract or abridgment of the transcript setting forth the material parts of the pleadings, facts and documents upon which he relies, together with such other statements from the record as are necessary to a full understanding of all questions presented to this court for decision," is complied with where appellant, complaining of the trial court directing a verdict for appellee, sets forth enough evidence to show that the case should have been submitted to the jury. (Page 226.)

2. SREET RAILWAYS—DEGREE OF CARE.—A street car company is required to exercise the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended. (Page 227.)

3. SAME—DUTY AS TO STOPPING CARS.—When the cars of street railway companies stop for passengers to alight, it is the duty of their servants to stop long enough for the passengers to alight, and to see that the car does not start again while any one is attempting to alight or is exposed to danger. (Page 228.)

4. SAME—EXTENT OF LIABILITY TO PASSENGERS.—Street railway companies are not insurers of the safety of their passengers, and are not bound absolutely to carry them safely or without injury; nor to provide such measures to protect them against accidents and injuries caused by their own acts or omissions which the exercise of reasonable foresight would not anticipate. (Page 228.)

5. SAME—PASSENGER RIDING ON FOOTBOARD.—Where a passenger rides on the step or running footboard of a street car with the knowledge and consent of the conductor and when there is no room elsewhere for him in the car, and he is injured by the careless management of the car, the question of his contributory negligence should be submitted to the jury. (Page 228.)

6. SAME—RISKS ASSUMED BY PASSENGER.—A passenger riding upon the footboard of a street car takes upon himself the duty of looking out

for and protecting himself against the usual and obvious perils of riding there, but does not assume any risk caused by the operation of the car in a negligent manner.   (Page 229.)

7.   TRIAL—DIRECTING VERDICT.—Where there was evidence tending to prove that plaintiff, while standing on the footboard of a crowded street car and trying to pay his fare to the conductor, was injured by the street car being started with a sudden jerk, it was error to direct a verdict for the defendant.   (Page 230.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* judge; reversed.

STATEMENT BY THE COURT.

The abstract of appellant sets up the following:

"The complaint charges that the defendant is a domestic corporation, operating a street railway. That on October 23, 1907, plaintiff took passage and became a passenger on defendant's car in Fort Smith. That all the seats were full, and plaintiff was compelled to ride on the running board, or long step of the car. That, by reason of the fault and negligence of the defendant in allowing its car to become overloaded and in operating the same with sudden stops and starts, and with violent stops and jerks while overloaded, plaintiff was crowded and thrown off the car, maimed and permanently crippled, to his damage in the sum of $7,100."

Defendant answered, denying specifically every allegation except the incorporation of the defendant, and in addition pleaded "that whatsoever injuries plaintiff received, if any, were caused by his own carelessness and negligence, directly contributing to said injuries.

Trial by jury, March 21 and 23, 1908.

Plaintiff testified in his own behalf: "I am 53 years old. I went to Ringling Bros' show at Fort Smith Oct. 23, 1907. We left the show tents and went to defendant's car line. We did not take the first car, because it was overloaded. Took the second car. The seats were full. Only 3 or 4 persons were standing on the running board. After we got on, the car filled, till it was very crowded. I put my right arm around a post of the car, and held on till the conductor came around to collect the fares. About this time the car was running very slow, or had stopped. I took my right arm from around the post, and

took hold of it with my left hand to hold while I handed the fare to the conductor with my right. The car started forward with a jerk. The crowd surged back, then forward, then back, and the jerk of the car, the surge of the crowd, jerked and crowded me off the car, and hurt and crippled me badly. Crippled my right hip. My right leg is shortest. I was not trying to get off the car. I didn't want to get off. I wanted to pay my fare and go to the depot. I was kept in the house two months, and kept under the influence of morphine to lull the pain."

Dr. W. R. Reeves testified: "I am a physician and surgeon. I waited on plaintiff, and treated him for the injury in controversy. His thigh bone was broken near the hip joint. To ease the pain, I kept him under the influence of morphine five or six weeks. He will be lame from the injuries the balance of his life. The bone of the hip joint where it was broken has been absorbed, and the bone becomes shorter than the other side. The broken bone and ligaments have united and formed a false joint. He will have a false joint the balance of his life."

Henry Rich testified: "I was with the plaintiff at Ringling Bros' show Oct. 23, 1907. We left the show tent about sundown. We got on a car to come back to town to get a train home. Lots of others got on the same car. Something was said about change; and I handed Bro. Oliver two nickles to pay our fare with. Bro. Tom Brown stepped off the car while it was running very slow. The car then moved very fast, and I looked back, and Bro. Oliver was on the ground, and I saw him try to get up and could not. I left the car and went back to him. * * * I saw him reach to hand the conductor the fare before he fell."

Tom Brown testified: "I was with the plaintiff at Ringling's show, Oct. 23, 1907. We left the show tent about sundown. We got on a car that was crowded, but the running board was not full. Plaintiff got on the running board. We got to a place I thought was 'Texas Corner.' The car slowed up, and I stepped off. I had not been on the ground half a minute when the car started with a quick jerk and threw him off. He seemed to go with a whirl. It must have started with a jerk to throw him as it did. It did not stop for him; kept on going. I think he was sober."

On rebuttal plaintiff testified.: "I was not trying to get off the car when I was injured. I did not tell any one so. I was sober."

The defendant lowered the running board, and invited the passengers to ride.

Thereupon counsel for the defendant moved the court to instruct the jury to return a verdict for the defendant.

The court sustained the motion and instructed the jury orally to return a verdict for the defendant. Plaintiff excepted. Verdict and judgment for defendant. No other instructions were given.

Upon the same day and at the same term of court, March 23, 1907, plaintiff filed a motion for a new trial on the following grounds:

"1. That the verdict and decision are contrary to law.

"2. That the verdict and judgment are against the evidence.

"3. The decision is not supported by the evidence.

"4. Error of law occurring at trial and excepted to by plaintiff.

"5. That the instruction given by the court is contrary to law and not supported by the evidence.

"6. Under the evidence the issue should have been submitted to the jury.

"7. The court erred in refusing to submit the case to the jury.

"8. The court erred in refusing to submit the question of defendant's negligence to the jury.

"9. The court erred in refusing to submit the question of plaintiff's contributory negligence to the jury."

The court overruled the motion, and the plaintiff excepted, and bill of exceptions allowed and filed April 30, 1908.

The appellee moves to affirm the judgment, and for cause says: "Appellant has wholly failed to file an abstract setting forth material parts of the proceedings, pleadings, facts and evidence herein, as required by rule 9 of this court. Appellee further says that there were eleven witnesses who testified at much length upon material and important matters during the progress of said trial. That appellant has entirely omitted to abstract the

testimony of seven of said witnesses. That appellant has devoted only two pages of his brief to facts and testimony, and that said facts and testimony cover 117 pages of the transcript herein. Wherefore appellee prays that the judgment be affirmed for non-compliance with rule 9."

*Rowe & Rowe,* for appellant.

It is not negligence *per se* for a passenger to ride on the running board of a street car. Where the conductor stops the car after it is full and invites passengers to ride on the steps, the presumption of contributory negligence does not obtain. Not only so, but it is negligence on the part of the company to allow its car to become overcrowded, and to allow it to be started with a sudden and violent jerk. 23 Am. & Eng. Enc. of L. (1st Ed.), 1013 and note 2, and 1014; 3 Thompson on Neg. § 3491; *Id.* § § 3486, 3515, 3484; 16 Pac. 667; 79 Ark. 378; 8 S. W. 900. Where there is any evidence to sustain the allegation of negligence, the case should be submitted to the jury. 57 Ark. 467; 71 Ark. 309; *Id.* 447. Where a *prima facie* case of negligence is made out, it must be submitted to the jury. 2 Thompson on Trials, § 2236.

· *Brizzolara & Fitzhugh,* for appellee.

1.· Appellant's abstract wholly fails to set forth the material parts of the pleadings, proceedings, facts and evidence as required by rule 9. Not to mention the testimony of seven witnesses wholly omitted, the meager abstract made of the testimony of four of the witnesses amounts to little more than conclusions of counsel. The judgment should be affirmed. 112 S. W. (Ark.) 890; 82 Ark. 574.

2. There is no presumption of negligence arising from injury to a passenger on a street car. 3 Thompson on Neg. § 3484. One who rides on the footboard of a street car assumes the risk incident thereto and the duty of looking out for and protecting himself from the dangers of his position. 29 Atl. 338; 50 Ill. App. 471; 89 App. Div. (N. Y.) 425.

WOOD, J., (after stating the facts.) Rule nine requires the appellant to file "an abstract or abridgment of the transcript setting forth the material parts of the pleadings, facts and documents upon which he relies, together with such other

statements from the record as are necessary to a full understanding of all questions presented to this court for decision. The abstract shall contain full references to the pages of the transcript."

The abstract above set forth is a strict compliance with the above rule. The court directed a verdict for appellee on the facts. It was only necessary for appellant to set forth the pleading and facts to the extent of showing that the court erred in giving a peremptory instruction. This was done. The appellant showed what the issue was, and set forth enough of the evidence to show that it was a question of fact for the jury to determine as to whether or not there was such negligence on the part of appellee toward appellant as would render the former liable to the latter for the injury alleged. As was said by this court in *Beavers* v. *Security Mutual Ins. Co.,* 76 Ark. 138, "It does not by any means follow that the appellant must set out all the vast volume of testimony." On the contrary, an abridgment of it is contemplated by the rule, and brevity is commendable where the material point to be decided is brought into the abstract.

Now, here the question was whether there was any evidence in the record, when viewed in the most favorable light for appellant, that would have warranted a verdict in in his favor under proper instructions. Giving the testimony abstracted by appellant its strongest probative force in his favor, it shows that he was a passenger on appellee's car. The seats were full when he boarded the car, but the running or foot boards were down, and there were then only three or four persons on the foot board. After this the car filled till it was very much crowded. The car ran very slowly or had stopped. Appellant disengaged one hand and held on to the post with the other for the purpose of paying his fare, and as he was in the act of handing his fare to the conductor the car started forward with a jerk, causing the crowd on the foot board to surge back and forth and "jerked or crowded appellant off." One of the witnesses whose testimony is abstracted shows that the "car started with a quick jerk and threw appellant off." The testimony shows that the appellant received a severe injury from the fall. This court in *Little Rock Traction & Electric Company* v. *Kimbro,* 75 Ark. 211,

announced the duty of common carriers by street railway to their passengers as follows, quoting from Mr. Booth on Street Railway Law: "A common carrier of passengers by street car is required to exercise the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended." Section 328.

"When the cars of street railway companies stop for passengers to alight, it is the duty of their servants to stop long enough for the passengers to alight, and to see that the car does not start again while any one is attempting to alight or exposed to danger. Stopping a reasonable time is not sufficient, but it is the duty of the conductor or those in charge to see and know that no passenger is in the act of alighting or in a dangerous position before putting the car in motion again (citing authorities)." Section 352.

This court in the above case further said: "But the carriers of passengers by street railways are not insurers of the safety of their passengers, and are not bound absolutely to carry them safely or without injury; nor provide such measures to protect them against accidents and injuries caused by their own acts or omissions, which the exercise of reasonable foresight would not anticipate." *Little Rock Traction & Electric Co.* v. *Kimbro,* 75 Ark. 211.

The appellee, as the evidence tends to show, having slacked the speed of its car, or stopped same, for passengers to get on and off, was negligent if it started the car forward again with such a sudden jerk as to cause its passengers who were upon the foot boards and exercising ordinary care for their own safety, to surge back and forth, and thus to crowd or throw some of them from the train. *Little Rock Ry. & Elec. Co.* v. *Doyle,* 79 Ark. 318; 3 Thompson on Neg. § § 3486, 3514, 3515 and cases cited in note.

It may be necessary, however, under some circumstances for street cars to start up suddenly, and it is not negligence *per se* for a car to so start. Whether a sudden start is necessary and consistent with the prudent and proper operation of the car will depend upon the circumstances. "As a general rule, a street

railway company is not liable for injuries caused by the starting of its cars, nevertheless it may be liable where the method is unusual and dangerous to passengers." Booth, Street Railway Law, § 350. See also § § 348, 349.

The law concerning the "riding on step or foot board" is thus announced by Mr. Booth:

"It is obviously more dangerous to ride on the step or foot board of a car than to occupy a seat inside. Therefore, it is the duty of a passenger, on boarding a car, if possible, to place himself in a safe position therein, and, if he fails to do so, it will afford him no excuse that it was customary for others to do the same thing, and that he was not warned of the danger of his position and compelled to seek another. If he voluntarily rides on the step or on the foot board of an open car, when there is ample room inside, and while so riding is injured by a collision with a car on a parallel track or with a vehicle or other obstacle in the street, his negligence is *prima facie* established, and the *onus* is upon him to rebut the presumption; but, while such conduct will ordinarily constitute a defense in an action against the carrier, it is no defense to an action against another party for colliding with the passenger. It is not, however, under all circumstances, negligence *per se* for a passenger, with the knowledge and consent of the conductor and when there is no room elsewhere on the car and no rule of the company is violated, to ride on the step or foot board. The carrier may refuse to permit a passenger to ride in that position, but when it accepts him as a passenger and permits him to occupy a place of more than ordinary danger because the car is crowded, it is bound to carry him with a degree of skill, prudence and care proportioned to the dangers to be apprehended. If, under such circumstances, he is injured by the careless management of the car, the question of his negligence should be submitted to the jury." Booth on Street Railway Law, § 341.

It follows from these principles that while appellant in riding upon the foot board of the car necessarily took upon himself the duty of looking out for and protecting himself against the usual and obvious perils of riding there, such as the swaying or jolting of the car while carefully and prudently operated, he did not assume any risk or danger caused by the operation

of the train in an unusual, improper and negligent manner. He assumed the risks ordinarily incident to the position in which he voluntarily placed himself, and the company would not be liable for any injury to him while in this position caused by the running of cars, provided at the time of the injury they were being operated with that high degree of care incumbent upon such carriers, as defined in the beginning of this opinion. See *Topeka City Ry. Co.* v. *Higgs,* 16 Pac. 667. Nor would the company be liable, though negligent, for any injury to which the concurring negligence of the party injured also contributed. See *Elliott* v. *Newport Street Railway,* 28 Atl. 338; *Moskowitz* v. *Brooklyn Heights R. Co.,* 89 N. Y. App. Div. 425.

We are of the opinion that the court erred in directing the verdict for appellee. The cause, under the rules above announced, should have gone to the jury for its determination on the evidence. The judgment is therefore reversed, and the cause is remanded for new trial.