GARRISON COMPANY *v.* LAWSON.

Opinion delivered November 1, 1926.

1. TRIAL—APPLICATION OF INSTRUCTIONS TO CASE.—An instruction relating to negligence regarding a blowpipe and oily floor, in a personal injury case, should not have been given where the evidence did not show that these conditions contributed to plaintiff's injury.

2. MASTER AND SERVANT—SAFE TOOLS—INSTRUCTION.—Where an employee, injured while operating a shaper machine, was supposed to change the knives of the machine when dull, it was error to submit the question whether the knives were dull and the dullness contributed to the injury.

3. TRIAL—CONFLICTING INSTRUCTIONS.—Where an employee was injured while operating a shaper machine, it was error to submit grounds of negligence under instructions taking no account of assumed risk, even though this question was submitted under another instruction, if the instructions, when taken together, were so conflicting as to confuse or mislead the jury.

4. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION WHEN.—Whether an employee, injured while operating a shaper machine, assumed the risk of such injury, *held,* under the evidence, for the jury.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; reversed.

*T. D. Wynne* and *Pryor, Miles & Pryor,* for appellant.

*J. F. O'Melia,* for appellee.

SMITH, J. Appellee recovered judgment to compensate a personal injury sustained by him while employed by appellant in the operation of a "shaper"

machine in appellant's furniture factory. Six separate acts of negligence were alleged on the part of appellant, and, in separate instructions, the court submitted each of these acts of negligence, each instruction being complete in itself, and each told the jury to find for the plaintiff if it were found that appellant was guilty of the act of negligence to which the particular instruction related.

The shaper machine which appellant was operating at the time of his injury was a heavy steel table, with a perfectly smooth, polished steel top, about five feet square, through the outer edges of which there were two holes, through each of which the end of a shaft protruded.

These shafts turn at a high speed, and on the end of them the operator fastened various saws and blades, which cut the edge of the timber and lumber in various shapes, to be used in decorating and manufacturing furniture, and, because of the use thus made of the machine, it is called a "shaper" machine. In the operation of the machine the operator determines the particular kind of knife or saw required, and he also determines when the knife or saw has become too dull for further use, in all of which instances it is the duty of the operator to change the knife, and it was not unusual for as many as a dozen of these changes to be made in a day. It was the duty of another employee to see that the knives were kept sharp.

Appellee testified that he was shaping a vanity dresser top, on which another piece of timber had been glued, and, when the revolving knives hit the cross-grain of the part that was glued to the dresser top, it jerked the piece of lumber he was shaping in a way to throw his hand into the knives, and all four of the fingers on his right hand, with which he was holding the lumber, were amputated.

The acts of negligence submitted to the jury were as follows: (1) the shaper did not have a proper guard or shield; (2-3) the shaper vibrated, rendering it dangerous, a condition which could have been remedied by fastening or bolting it more securely to the floor; (4)

there was no proper footing for appellee to stand on, in that the floor was oily and slippery; (5) there was no sufficient blow-pipe to carry away the shavings which accumulated on the shaper and on the floor; (6) the knives on the shaper were dull.

The instructions given permitted a recovery if it were found that appellant was guilty of any of the acts of negligence alleged, and to each of these instructions the objection was made that no account was taken of the defense of assumed risk set up in the answer. Appellant objected to the giving of any of the instructions, upon the ground that, under the undisputed evidence, a verdict should have been directed in its favor.

It may be first said that certain of these instructions should not have been given, for the reason that the acts of negligence complained of were not the proximate or contributing causes of the injury. This is true of the allegations of negligence in regard to the blow-pipe and the oily condition of the floor. There is no testimony showing that these conditions, even though their existence constituted negligence, contributed to appellee's injury, and the instructions on those subjects were therefore abstract and erroneous.

We are also of the opinion that it was erroneous to submit the question whether the knives were dull, and, if so, whether their lack of edge contributed to the injury, for the reason that sharp knives were available, as they were required in the operation of the machine, to appellee, who would be the first person to know whether a knife had lost its edge, and it was his duty to change the knives when this happened.

We are also of the opinion that it was error to submit the other grounds of negligence under instructions which took no account of the defense of assumed risk. It is true this question was submitted under instructions requested by appellant, but this was done after the various instructions requested by appellee had been given, a number of which undertook to define the conditions under which the jury should find for the plaintiff, and

these instructions eliminated or failed to take into account the fact that appellee might have assumed the risk of the negligence complained of, and could not recover if he had done so.

This court has many times held that the instructions, when taken together, should not be so conflicting as to confuse or mislead the jury, not giving them a certain guide to follow in making their verdict. One of our leading cases on this subject is that of *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140, 124 S. W. 1048.

The instructions do not come within the apparent exception to this rule announced in the case of *St. L. I. M. & S. R. Co.* v. *Rogers,* 93 Ark. 564, 126 S. W. 375, where it was said that, "though the instructions given may be apparently conflicting, if, from the language used or the relation which the instructions are made by the whole charge to bear toward each other, it is readily seen that they are to be read together without conflict and as a harmonious whole, and they can be so read, then it is our duty to so treat them."

There was no intention, however, in the Rogers case *supra,* to depart from the rule that the instructions must, as a whole, give the jury a certain guide to follow in making up their verdict, for in that case it was also said: "It has been decided by this court, in an unbroken line of cases, that an instruction which ignores a material issue in the case about which the evidence is conflicting and allows the jury to find a verdict without considering that issue, is misleading and prejudicial, even though another instruction which correctly presents that issue is found in other parts of the charge. Where the instructions are thus conflicting, it is impossible for an appellate court to tell which of them the jury followed, and such an error calls for a reversal. Separate and disconnected instructions, each complete in itself and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole." Among the numerous cases cited by the court in thus

announcing the law was that of *Southern Anthracite Coal Co.* v. *Bowen, supra.*

It is the opinion of the majority, however, that, although the case must be reversed, because the instructions were conflicting and could not be read as a harmonious whole, and also because acts of negligence were submitted which were not shown to be proximate or contributing causes of the injury, the case should not be dismissed. It is the opinion of the majority—in which the writer and the Chief Justice do not concur—that it cannot be said as a matter of law that the injury was the result of one of the assumed risks of the employment.

Appellee was a man thirty-one years of age, had been in service in France during the World war, and, after his return, had worked in and around machinery in furniture factories for about four years before his injury. He had, for a period of ten days or two weeks, operated a similar shaper machine at another factory, and had operated the machine at which his injury was sustained for about two and one-half months prior to his injury. It was shown, however, that all shaper machinery was dangerous, and required skill and care in its operation to avoid injury to the operator, and one of the shapermen who had operated the machine in question told the foreman, shortly before appellee's injury, that the machine in question was dangerous because it had no hood, and because of its vibration. Appellee testified that he had never seen a guard on such a machine, and, although there was testimony that a guard had been prepared by another employee for this machine, it had never been placed in position, and there was testimony to the effect that, had this been done, the chance of injury to the operator would have been greatly lessened.

Other employees testified that the work of a shaper was one requiring much skill, and that years of experience were required to make one a skilled shaper, and that the chance of injury was in proportion to the lack of skill.

It is the opinion of the majority that, although appellee must have known, as any one would know, that he would be cut if he permitted his hand to come in contact with the knives, yet he did not appreciate the danger of this happening because of the lack of a guard, and that this lack of appreciation of the danger of operating the machine without a guard, together with his inexperience as a shaper, made a question for the jury whether he had received sufficient instruction or had had sufficient experience to appreciate the danger of the employment.

It is the opinion of the writer and the Chief Justice that the dangers attending the operation of the shaper were so open and obvious that they must have been known and appreciated, and that they were therefore assumed, and that the skill which the shaper acquired by years of employment added nothing to the appreciation of the danger, although it increased his skill in following the patterns designed for the ornamentation of the furniture in the manufacture of which he was employed.

It follows therefore that, although the case must be reversed, because of the erroneous instructions given the cause should not be dismissed, and it will therefore be remanded for a new trial.