TEMPLE COTTON OIL COMPANY v. SKINNER.

Opinion delivered January 30, 1928.

1. MASTER AND SERVANT—ASSUMED RISK.—An employee assumes all the risks naturally and reasonably incident to the service in which he engages, where hazards of the service are obvious and within the apprehension of a person of his experience and understanding.

2. MASTER AND SERVANT—JURY QUESTION.—In an action by a mill employee for injury from falling sacks of meal, evidence *held* to make the assumption of risk a jury question.

3. EVIDENCE—TESTIMONY AS TO CONDITIONS OF INJURY.—In an action by a mill employee for an injury done by falling sacks of meal, a witness who examined the scene of the accident shortly thereafter was competent to testify to the conditions under which he found the sacks immediately after the accident.

4. TRIAL — COMPLETENESS OF INSTRUCTION. — If an instruction undertake to tell the jury when a verdict should be returned for either party, it should be complete in itself; and where the body of the instruction does not contain every material fact proper to be established, the stereotyped "find for the plaintiff" or "for the defendant" should be omitted.

5. TRIAL—INCONSISTENT INSTRUCTIONS.—Separate and disconnected instructions, each complete and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole.

6. TRIAL—INCOMPLETE INSTRUCTION.—An instruction in a personal injury case, which leaves to the jury the determination of the defendant's conduct as the sole issue, but concluding with the phrase, "you will find for the plaintiff," is inherently erroneous in leaving out of consideration the issues involved as to, the plaintiff's contributory negligence and assumption of risk.

Appeal from Hempstead Circuit Court; *James H. McCollum*, Judge; reversed.

STATEMENT OF FACTS.

This was an action by Gordon Skinner against the Temple Cotton Oil Company to recover damages for a personal injury, which, he alleges, was caused by the defendant's negligence while he was engaged in the performance of his duties as a servant of said company.

According to the testimony of Gordon Skinner, he was twenty-five years old on the 15th day of October, 1926. He was injured on the 1st day of May, 1926, while engaged in loading meal and hulls on local orders for the Temple Cotton Oil Company at its cotton mill at Hope, Arkansas. He had been employed by said company since August, 1925. His duties were loading out meal and feeding the hull bran machine. He did not stack any hulls. In March, 1926, he was moved to the warehouse to load out cottonseed meal on local orders. He was engaged in this work at the time he was injured. Whenever a ticket was brought from the office, it was his duty

to fill the order called for by the ticket. The instructions were indicated on the ticket. He loaded out the orders, with the help of the driver who came for the meal. For convenience in loading out the meal, different grades of meal were stacked separately in different parts of the warehouse. Each section had its stacks between a row of posts about sixteen feet apart. The method of stacking in the sections was to begin at the wall of the warehouse at which were laid lengthwise six sacks of cottonseed meal against the wall on the south for support. In like manner the sacks were placed on the top of each other to a height of about twenty feet. The same process was adopted in placing other sacks against these which were piled next to the wall. After the sacks reached a height of about seven or eight feet, they were jammed against each other for the purpose of tying them and thus rounding out the section. The first tier of sacks was piled to its full height against the wall, and the rest of the sacks of meal were piled down somewhat like stairsteps to the front for the purpose of better enabling the servants to handle the same while stacking or unstacking them. The section consisted of six tiers, each running from the aisle in the center of the warehouse back to the south wall. The sacks in each tier were first unloaded.

The accident occurred about 1:30 P.M. According to the plaintiff's testimony, he had taken the sacks from a tier in the back against the wall. There was a sack lying off to one side, and the plaintiff was trying to get it, when a pile in another section fell on him. None of the sacks had been taken off of the stack that fell on the plaintiff. The plaintiff did not examine the stacks for the purpose of seeing whether they were stacked properly, and it was not his duty to do so. He had not noticed that there was any defect in the stacking of the pile of sacks of meal that fell on him. The plaintiff was severely injured, and suffered great pain for a long time. According to the evidence of physicians in his behalf, he was permanently injured.

Webber Skinner, a brother of the plaintiff, was also a witness for him. According to his testimony, he was working at the oil mill of the defendant in what was known as the shaker room at the time his brother was injured. As soon as he heard of the injury to his brother, he ran to him. They had taken the sacks of meal off of his brother and had laid him out in the aisle when he got there. Witness saw the stack from which the sacks of meal had fallen on his brother. He was asked to tell how it was stacked, and we copy from the record his testimony on this point as follows:

"A. It was stacked kindo' looped in front, and another part here stacked up against the walls; stacked properly part of the way, but on top looked like it was just throwed up there. Q. It was stacked up how high? A. About fourteen or fifteen sacks high. Q. You say on top it was just laid crossways on one another? A. Yes sir. Q. Wasn't stacked properly? A. No sir."

The witness said that the defect in stacking the sacks of meal could not have been noticed unless a close examination was made. He also testified that he knew when piles of sacks of cottonseed meal were stacked properly. He had never stacked sacks of meal, but he had seen them stacked, and knew how it ought to be done.

According to the evidence introduced by the defendant, the different tiers of meal in sacks were stacked properly, and the plaintiff was injured by sacks falling down from the section from which he was taking a sack of meal for the purpose of loading it for a customer.

The jury returned a verdict for the plaintiff in the sum of $8,000, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*O. A. Graves, T. D. Wynne* and *Charles A. Miller,* for appellant.

*William F. Denman,* for appellee.

HART, C. J., (after stating the facts). It is first earnestly insisted that the court erred in not directing a verdict for the defendant. In making this contention, coun-

sel claim that the court should have told the jury as a matter of law, under the evidence introduced, that the plaintiff assumed the risk. This court has so often said that the employee assumes all risks naturally and reasonably incident to the services in which he engages, where the hazards of the service are obvious and within the apprehension of a person of his experience and understanding, that a citation of authority is hardly necessary. In short, by the contract of service, the servant agrees to bear the risk of all the ordinary dangers incident thereto, and he therefore cannot recover for an injury resulting therefrom. *C. R. I. & P. Ry. Co.* v. *Grubbs,* 97 Ark. 486, 134 S. W. 636, and cases cited.

In asking for a directed verdict, counsel for the defendant relied expressly upon *Arkansas Cotton Oil Co.* v. *Carr,* 89 Ark. 50, 115 S. W. 925, and *Francis* v. *Arkadelphia Milling Co.,* 153 Ark. 236, 239 S. W. 1067. We do not consider these cases as conclusive that the plaintiff assumed the risk.

In the Carr case the servant was engaged in moving stacks of meal from a pile for the purpose of loading them on railroad cars, and was injured by other bags on the same pile falling on him. He was held to have assumed the risk because the undisputed facts showed that the servant was injured while in the discharge of his duties, which required him to constantly change the condition of the working place. In that case the nature of the work in removing sacks made the working place more or less dangerous, and it was the duty of the plaintiff to make close examination of the place to see that it was safe. In the case at bar, the servant was injured by a sack from a different pile falling upon him. He was not required to make an examination of his working place in order to see that it was safe. He was not changing the condition of the working place at all. The danger was created by the acts of other servants in piling the sacks of meal, and it did not result from the act of the servant in removing a sack from the pile of sacks filled with cottonseed meal which fell upon him.

In the Francis case, the court said that the undisputed facts showed that the danger was so patent and open that it might have been noticed by casual observation. The pile of sacks of meal was not only perpendicular, but was leaning or bulging out at the top. The plaintiff was familiar with the place where he was working, and the condition in which the sacks were left through the negligence of the employees of the defendant was obvious and evident to any one working around the stacks of sacks. We cannot say that this is a matter of law here. According to the evidence of Webber Skinner, the pile of sacks of cottonseed meal which fell and injured the plaintiff was not properly stacked. On the top it looked like the sacks were just thrown up there and were not placed close together as they should have been. The defect was one that was not observable unless a close examination was made. The plaintiff had nothing whatever to do with stacking the sacks of cottonseed meal, and it was not his duty to examine his working place to see if it was safe. He was not injured by sacks falling from the pile on which he was working to remove the sacks. Hence there was no occasion for him to have observed the pile of sacks which fell and injured him.

Under the facts and circumstances shown by the plaintiff, we do not think the court was required as a matter of law to have instructed a verdict for the defendant on the ground that the plaintiff assumed the risk. On the other hand, we think the court properly left the question of assumption of risk by the plaintiff to the jury as a matter of fact to be determined by it.

The next assignment of error is that the testimony of Webber Skinner was not competent because it was not shown that he had any knowledge of the matters about which he was testifying, and that his testimony was purely speculative, because it was only expressive of his own opinion. We do not agree with counsel in this contention. This witness made an examination of the scene of the accident immediately after it occurred. He

examined the pile of sacks of cottonseed meal, and described their condition. He stated facts as they appeared from the condition of the pile of sacks of cottonseed meal, and the jury had a right to give it such force as might be deemed proper, considering his explanation of the way he found the pile of sacks immediately after the accident occurred. *St. L. I. M. & S. Ry. Co.* v. *Flinn,* 88 Ark. 489, 115 S. W. 142; *Little Rock Traction & Electric Co.* v. *Nelson,* 66 Ark. 494, 52 S. W. 7, and *St. Louis-San Francisco Ry. Co.* v. *Barron,* 166 Ark. 641, 267 S. W. 582.

Counsel for the defendant also contend that the judgment must be reversed because the court erred in giving instructions Nos. 1 and 3, requested by the plaintiff. The instructions complained of read as follows:

"Instruction No. 1. You are instructed that it was the duty of the defendant to use reasonable care to provide the plaintiff, Gordon Skinner, with a reasonably safe place in which to work; and if you find from a preponderance of the evidence in this case that the defendant, Temple Cotton Oil Company, negligently failed to use such care in the stacking of its meal, by which the plaintiff claims to have been injured, and that by reason of such failure the plaintiff was injured as alleged, without fault or carelessness on his part, then it will be your duty to return a verdict for the plaintiff, Gordon Skinner."

"Instruction No. 3. You are instructed that, while an employee assumes all the risks and hazards usually incident to the employment he undertakes, he does not assume the risk of the negligence of the company for whom he is working or any of its servants. In other words, he has a right to assume not only that the master will perform its duty, but he has a right to assume that each of the other servants will perform their duty, and if, while in the exercise of ordinary care, he was injured, either by the negligence of any other servant of the master, he has a right to recover; and if you find from a preponderance of the evidence in this case that

the plaintfif, Gordon Skinner, while in the exercise of ordinary care, was injured by the negligence of the master for whom he works or by the negligence of any other servant in the stacking of the meal, by which plaintiff claims he was injured, if you find it was negligently stacked, then your verdict should be for the plaintiff.''

At the request of the defendant the court instructed the jury upon the doctrine of assumed risk as a defense to the action. Counsel for the defendant claim that the instructions copied above are erroneous, under the doctrine laid down in *Garrison Company* v. *Lawson,* 171 Ark. 1122, 287 S. W. 396, and *Natural Gas & Fuel Co.* v. *Lyles,* 74 Ark. 146, 294 S. W. 395.

On the other hand, counsel for the plaintiff seeks to uphold the action of the circuit court in giving the instructions under the doctrine laid down in *St. Louis, Iron Mountain & So. Ry. Co.* v. *Rogers,* 93 Ark. 564, 126 S. W. 375, 1199.

We all agree that an instruction should be complete in itself when it undertakes to tell the jury when a verdict should be returned for the plaintiff, and that the trial court should not instruct the jury that it must find for the plaintiff or the defendant, as the case might be, upon a partial or incomplete statement of the law applicable to the material facts of the case. We also agree that, where the body of the instruction does not contain every material fact proper to be established, what is called in *Winter* v. *Bandel,* 30 Ark. 362, p. 376, the stereotyped ''find for the plaintiff'' had better be left off.

The majority of the court, however, is of the opinion that the Rogers case has no application under the record as presented in the case at bar. In the Rogers case, while the instruction complained of wound up with the phrase, ''then you will find for the plaintiff,'' it was immediately followed by an instruction upon contributory negligence; and the court held that, from the language used in the two instructions and their juxtaposition, they were in reality explanatory of each other, instead of being inconsistent and contradictory. The court in that

case reiterated the rule laid down in *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140, 123 S. W. 1048, and other cases of this court to the effect that separate and disconnected instructions, each complete and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole. Hence the majority of the court holds that, while an incomplete instruction may be cured by a subsequent one, as laid down in the Rogers case, the instructions in question are inherently wrong, and cannot be cured by a subsequent instruction, for the reason that the two instructions are inconsistent and only serve to confuse and mislead the jury. The majority is of the opinion that the two instructions copied above and the instructions given at the request of the defendant on the doctrine of assumed risk contain inconsistent propositions of law which call for a reversal of the judgment.

The writer thinks that the better view is that a general objection was not sufficient, but that a specific objection should have been made, as explained in *Arkansas Midland Rd. Co.* v. *Rambo,* 90 Ark. 108, 117 S. W. 784, and *St. Louis Southwestern Ry. Co.* v. *Graham,* 83 Ark. 61, 102 S. W. 700, 119 Am. St. Rep. 112. It is true that the instruction complained of in each of these cases does not conclude with the phrase, ''you will find for the plaintiff,'' but the writer thinks that equivalent words are used, in which the jury was told that, if it should find the defendant guilty of the negligent acts set out in the instruction, the plaintiff would be entitled to recover.

The result of our views is that it is established as a settled law of this State by the decision in *Garrison Co.* v. *Lawson,* 171 Ark. 1122, 287 S. W. 396, and *Natural Gas & Fuel Co.* v. *Lyles, supra,* that an instruction is inherently erroneous, and therefore prejudicial, which leaves out of consideration the plaintiff's contributory negligence or his assumption of risk, and leaves to the jury the determination of the defendant's conduct, as the sole issue of the jury's verdict, by concluding with the phrase, ''you will find for the plaintiff,'' since, under

the evidence, the conduct of the plaintiff as well as that of the defendant is essential to a proper verdict.

For the error in giving instructions Nos. 1 and 3, at the request of the plaintiff, the judgment will be reversed, and the cause will be remanded for a new trial.