WARREN & OUACHITA VALLEY RAILWAY COMPANY *v.*
EDERINGTON.

Opinion delivered June 16, 1930.

*Fred L. Purcell* and *Wynne & Miller*, for appellant.
*Wilson & Martin,* for appellee.

BUTLER, J. Appeal from a judgment awarding damages to the appellee for personal injuries sustained.

The appellee was in the employ of the Warren & Ouachita Valley Railway Company, appellant, as a motorman on its motor passenger car operating between Warren and Tinsman, the shops being located in Warren. Appellee was first employed by the appellant about 1920 and worked as a helper of the master mechanic in the shops of the appellant for a time, after which he began

operating the motor car, first operating it at intervals until, more than a year preceding the occurrence out of which this litigation arises, he was the regular employee operating said motor car. On the 20th day of December, 1926, the appellee suffered an injury to his thumb. In some six or nine days thereafter blood poison developed which necessitated the amputation of his arm near the shoulder.

The testimony relative to the occurrence of the injury and the attendant circumstances is in direct conflict. That on the part of the appellee is to the effect that in the forenoon of the 20th day of December, 1926, and after the appellee's first round trip on that day, he discovered that an instrument called a valve lifter which was necessary for the proper operation of the engine could not be found. He requested another from the master mechanic, foreman of the shops and the superior of the appellee, who had employed him and under whose direction he worked. The appellee was informed by the master mechanic that he did not have another valve lifter, and directed him and a negro helper to make one. The lifter was a V-shaped instrument with a handle, and the foreman picked up from a point in the shop a piece of automobile spring and handed it, with a tool called a cold cutter, to the appellee, directing him where to place the cutter, how to place and hold it and the piece of spring, and, at the same time, directing the helper to strike the cutter with a sledge hammer. The cutter was made of steel, tempered so that it would cut cold iron. It was an instrument measuring about four or five inches one way and one and a half inches the other, through which was an eye for a handle about two feet long. The instrument and the handle presented in size and appearance an Indian tomahawk, having a cutting edge with a head on the other end on which blows might be given in forcing the cutting edge into the iron. The negro helper, in obedience to the orders of the foreman, struck the cutter one or more blows which were not sufficient to cause the

cutter to bite into the iron spring. The foreman directed him to strike harder, and thereupon, while appellee was holding the cutter by the handle and on the automobile spring, he struck the base of the head of the cutter a very heavy blow, breaking a sliver from one corner of the head of the cutter which passed with violence through the thumb of the appellee and on beyond, striking and sticking into the wall. At that time the foreman had gone. The appellee went immediately to the appellant's physician where first-aid treatment was given and the thumb bound up. The injury gave appellee no great inconvenience and he continued to operate the motor car, keeping his thumb protected all the while until December 29, following. On the morning of the 29th of December, he told the foreman that his thumb was giving him pain, and that he would have to see the doctor. The foreman informed him that, after he had made his second run, he could then go and see the doctor. Appellee worked about two hours longer in the shops and then told the foreman that he felt unable to take the car out. He was told there was no one else to do this, so he operated the car on the second round, and after he reached Tinsman he became violently ill. A local physician treated him at Tinsman, and he was returned to Warren and treated for a couple of days at his home, and then taken to a local hospital where he stayed for perhaps forty days. During all of that time he suffered great pain, the cause of which was blood poison. Appellee's thumb was first removed, then his arm, and finally it became necessary to make another amputation close up to the shoulder. A short time after the injury the appellee examined the cold cutter and discovered that where the sliver was broken off the steel showed a mark which witnesses call a water crack and which, witnesses say, was due to improper handling during the process of tempering, causing the crack to form. There was testimony to the effect that the degree of temper or hardness could be known from the color—that where the color was light gray the steel was tempered

too much, rendering it hard and brittle, and that the appearance and color of the cutter indicated this condition. Appellee testified that at the time the cutter was handed to him the foreman stated that he had tempered the cutter and that it was all right.

It is undisputed that the disease and the condition resulting from the operations have rendered, and will render, the appellee unable to perform manual labor, and that he is now suffering and will continue to suffer pain. There was testimony to the effect that the injured thumb was carefully tended and protected and the wound was the direct and proximate cause of the infection.

Regarding the circumstances connected with the attempted making of the valve lifter, as already stated, the evidence is in conflict. The foreman testified that he was not present and did not direct the appellee to make the valve lifter, did not hand him the cold cutter and did not select for him the piece of automobile spring out of which it was to be made. The negro helper testified that the foreman was not present, and that appellee himself called him to assist in the making of the instrument. On this state of the testimony, it was the theory of the appellee that his injury was occasioned by the negligent conduct of the foreman in directing him to work with a tool which was unsafe because of its improper tempering and, further, by the heavy blow struck by the helper at the direction of the foreman. On the other hand, it was the theory of the appellant that the appellee, without the knowledge of the foreman, selected the cold cutter and the piece of automobile spring and chose his own method for the performance of the work, and that whatever was done by the helper was at the request and direction of the appellee, himself, for all of which the appellant was not liable. Moreover, that the blood poisoning was the result of appellee's negligence in not obeying the directions of the physician and not properly protecting the injured thumb.

We think the respective contentions are supported by sufficient substantial evidence to warrant their submis-

sion to the jury, and that the amount of damages awarded is not excessive. It follows that the contention of the appellant that a verdict should have been directed in its favor in the court below cannot be sustained. It is insisted that there is no evidence that the cold cutter was defective, or, if so, that its condition was known to, or could have been discovered by, the appellant in the exercise of ordinary care. In this the testimony on the part of the appellee is ignored. As we have seen, the appellee testified that the master himself selected and gave him the cold cutter, and that there was no other that he knew of in the shops. There was evidence that the color of the cold cutter indicated its having been too highly tempered, and that the water crack could have been discovered by an inspection of the instrument. Moreover, there was evidence that the foreman had tempered the cutter himself, and that the streak or water crack was caused by taking the cutter out of the water too quickly while tempering it. From what we have said it is apparent that the appellant is in error when it states that the defect was assumed simply because the tool slivered, and, if said defect did exist, it was known, or could have been discovered by reasonable inspection.

It is next insisted that, because the cutter used was a simple instrument, no duty of inspection rested upon the appellant, and in support of this position is cited the case of *Arnold* v. *Doniphan Lbr. Co.,* 130 Ark. 487. In that case a demurrer to the complaint was sustained, the court saying: "Few tools could be simpler in their construction and use than the hatchet, and the defect which occasioned the injury was developed by its use by the servant himself." That case is distinguished from the case at bar in this: the defect of the hatchet in the Arnold case was developed by its use by the servant himself, while in the instant case the defect in the cold cutter was occasioned by its being improperly tempered, so that a crack was formed, and it was rendered too brittle, and this, not the act of the appellee, but of the fore-

man who selected and gave the tool to the appellee with directions to use it. In *Arnold* v. *Doniphan Lbr. Co., supra,* we said: "This doctrine ('simple tool'), as such, has never had recognition by this court; yet the principles upon which that doctrine is based have been recognized in a number of decisions of this court. That is, the simplicity of a tool, and the skill or lack of it required in its use, have been treated as questions to be considered in determining the degree of care to be used by the master in the selection of such tools for the purposes of his servant, and of the directions and instruction which should be given the servant in its use." In the case at bar, accepting the testimony of the appellee, he had no choice in the selection of the tool nor in its preparation for use. The selection of the tool was made by the foreman, and the defect in said tool caused by the manner in which it had been tempered, which defect might have been discovered by casual observation.

It is also insisted that the injury and its resulting consequences were due to an "adventitious or fortuitous circumstance." There are few occurrences which are wholly accidental in their nature. We cannot say as a matter of law that the injury in this case was due to accident, for, if the tool was too highly tempered and too quickly withdrawn from the water, it may have been reasonable to anticipate that it would break or sliver upon receiving a heavy blow. Appellee quotes from 3 Labatt on Master & Servant, § 1042, where the rule is laid down that the master is not liable where the defect is secret or latent, or not discoverable on inspection and that no culpability is predicable where the most careful scrutiny would not have disclosed the defect, or where the appliance was apparently in sound or good condition, and that injuries due to conditions of this character are unforeseen accidents. It was a question for the jury under the proof in this case to say if the defect could or could not have been discovered by a reasonable inspection, or whether or not there was anything to suggest a suspicion of unsoundness.

In *LaGrand* v. *Arkansas Oak Flooring Co.*, 155 Ark. 592, cited and relied on by the appellant, it was held that if the master, in the exercise of ordinary care to furnish a safe place and tools, could not have reasonably anticipated or foreseen the injury, he would not be negligent in failing to provide means to prevent it. The principle stated in that case is applicable to the case at bar, and in that case, as in this, the question was submitted to the jury.

Instruction No. 14 requested by the appellee and given by the court, and instruction No. 5 given at the instance of the appellant, submitted to the jury the respective theories of the parties to this suit. The other instructions given may be said to be explanatory and illustrative of these propositions, except instruction No. 11 requested and given for the plaintiff and instruction No. 7 given at the instance of the appellant, which last submitted the question of an efficient supervening cause being responsible for the injury. We think the instructions, taken as a whole, fairly present the issues.

The tenth and eleventh assignments of error urged to the court's attention allege that the court erred in its charge to the jury in instruction No. 11 and instruction No. 14, requested by the plaintiff. Instruction No. 11 submits the question of liability for the negligence of a fellow servant, and the further question as to whether or not the negro helper was a fellow servant of the appellee. This instruction, we think, was more favorable to the appellant than it should have been, for it would have been immaterial whether the helper of the appellee was negligent in the manner of his striking the cutter, for, if the cutter was defective in the manner heretofore stated and was prepared and selected by the master for the use of the appellee, appellant would be liable without regard for the care or lack of care of the helper in striking the cutter, if the defect was the cause of the sliver breaking off.

Instruction No. 14 complained of has been approved by this court in the case of *Hunt* v. *Hurst*, 170 Ark. 644,

where the facts were quite similar to those of the instant case. Instruction No. 14 is as follows: "You are instructed that the burden of proof is upon the plaintiff to prove that it was the duty of the defendant to exercise reasonable care in furnishing the plaintiff reasonably safe tools with which to work, the defendant being required in such respect to exercise the same degree of care and caution which would have been exercised by an ordinarily prudent man under the same circumstances. And if you find from a preponderance of the evidence in this case that the cold cutter furnished plaintiff, if you believe and find from a preponderance of the evidence that it was furnished to the plaintiff and not selected by the plaintiff himself from the tools of defendant for use in the performance of his duties, was in a defective or dangerous condition, which condition would have been discovered by the employer in the exercise of ordinary care, and if you find that such defective or dangerous condition was not apparent to the plaintiff, and would not have been discovered by him in the exercise of reasonable care for his own safety, and if you further find that the plaintiff suffered an injury on account of such alleged defective condition of the cold cutter, then you are told that the defendant was guilty of negligence. In other words, it is for you to determine whether the defendant was under obligation to inspect the cold cutter in question before delivering it to plaintiff, you being instructed that the duty of the defendant under such circumstances was to act as an ordinarily prudent man would have done under similar circumstances."

By an examination of the instruction approved in *Hunt* v. *Hurst, supra,* it will be seen that the instruction above set out follows exactly the language of the Hunt case except where change in the language is necessary to make it applicable to a slightly different state of facts.

The final assignment of error is that the court erred in giving appellee's instruction No. 15, because it ignored the defense of assumed risk and failed to take into con-

sideration the contention that an intervening cause was the proximate cause of appellee's present condition. Instruction No. 15 is as follows: "If you find from a preponderance of the testimony that the plaintiff's injury was caused by the negligence of the defendant and the puncture of his thumb by the piece of the cold cutter was the proximate cause of his injury and all the attendant pain and suffering resulting therefrom, then you are instructed that the defendant is liable for said injury, and for all the consequences and effects of same, even though you might believe from the evidence that, if the plaintiff had not taken blood poison after receiving the injuries that said injuries would have been only temporary, provided plaintiff exercised due care for the protection of his injured thumb."

It will be seen from the last provision of this instruction that it does not ignore the contention of the supervening cause, and, when read in connection with appellee's instruction No. 4, and appellant's instruction No. 4, it is sufficient on the question of assumed risk. This instruction is unlike that held erroneous in *Natural Gas & Fuel Co.* v. *Lyles,* 174 Ark. 146, *Garrison Co.* v. *Lawson,* 171 Ark. 1122, and *Temple Cotton Oil Co.* v. *Kenner,* 176 Ark. 17, in that it did not undertake to tell the jury to "find for the plaintiff." It is often impracticable to state the entire law of the case in a single instruction or to take notice of each and all of the defenses that might be interposed. Unless an instruction is in conflict with other instructions, the mere fact that it is incomplete will not render it prejudicial if from an inspection of it and a comparison with other instructions given the meaning of the court is clear.

In conclusion, we may say that the trial judge fairly and correctly stated the law, when the charge is considered as a whole, and, while there was a direct conflict in the testimony as to all the material issues, the jury were the sole judges of the credibility of the witnesses, and it was the opinion of the jury that the testimony tending to

1046

support the theory of the appellee was reasonable and true, and, as there was substantial testimony to support this conclusion and finding, it cannot be disturbed. The judgment is therefore affirmed.