ARKANSAS POWER & LIGHT COMPANY *v.* MART.

4-3166 and 4-3325

Opinion delivered November 20, 1933.

*Rose, Hemingway, Cantrell & Loughborough* and *J. W. Barron,* for appellant.

*J. H. Lookadoo, John B. Gulley* and *Lewis Rhoton,* for appellee.

MEHAFFY, J. This action was begun by the appellee to recover damages for personal injuries alleged to have been caused by the negligence of the appellant. The appellee alleged that on December 15, 1932, she boarded one of appellant's inbound cars at Ninth and Barber Avenue, in Little Rock, Arkansas, and paid her fare; that, before she became seated, the car made a sudden and violent jerk forward, which threw her against the seats and then to the floor upon her head and back; that the motorman ran a block before he discovered her helpless condition, whereupon he assisted her from the floor; there were no other passengers in the car; as a result of the fall she alleged her nervous system was seriously and permanently shocked, and described her injuries; she alleged that they were permanent, and were caused by the careless, negligent and reckless manner in which the motorman started the car. She asked damages in the sum of $35,000.

Appellant answered denying all of the material allegations in the complaint. There was a trial and a verdict and judgment for the sum of $10,000. Appellant filed motion for a new trial, which was overruled, and this appeal is prosecuted to reverse the judgment of the circuit court.

Appellant's first contention is that there was no negligence shown, and that its requested peremptory instruction should have been given.

Ross Powell, a witness for appellee, testified that he saw the appellee on the street car, and saw her thrown down just as the car passed Barber Avenue; that the motorman stopped the car just after it crossed Rector, and he knew positively that it was appellee; she got off at Ninth and Main Streets. Witness was in an automobile and stopped his car and the appellee got off and, instead of going to the sidewalk, stood there; witness put her in his car and carried her to her home on Ninth

and Barber; that she appeared to be badly hurt; witness stated that he was in his cousin's, C. E. French's, car, and that he had been to the Biddle Shops; that he had an appointment with Willis Smith, and he had gone to the Biddle Shops to collect $5 from Smith; that at the time of the accident he was going home from the Biddle Shops; that it had been snowing, and there was snow on the windows, but the car was lighted, and he could see appellee through the windows. He testified that when he drove up to the car appellee got on, he could not pass the car, and stopped his car, and it seemed that the motorman had trouble getting the street car started. Appellee was the only person on the car.

The appellee testified that she was 38 years old, lived at 910 Barber, Little Rock, where she had lived for 10 years; that on December 15th she boarded a street car at 9th and Barber; that it was snowing and she stepped back into the car to take a seat; that the car started with a sudden and violent jerk, hard enough to throw her off her feet; there was no one else on the car except the motorman; that Powell picked her up at 9th and Main and took her home; that Mrs. Risher helped put her to bed, and gave her some medicine. She then describes at length her injuries. She was facing the rear of the car when she fell, and fell toward the motorman; she did not get the number of the car, but knows it was one of the old type; she did not recognize the operator, and does not know whether she could identify him. Suit was filed on December 30th. She works for the R. F. C. at the Pulaski County Court House.

The evidence that it was snowing; that there was no other passenger on the car; that the car was an old one, and that, without giving the appellee time to be seated, the car was started with a sudden and violent jerk sufficient to throw her down in the manner the evidence shows she was thrown, together with all the surrounding circumstances, is sufficient evidence to submit the question to the jury.

Appellant cites and relies on the case of *Oliver* v. *Ft. Smith Light & Traction Co.*, 89 Ark. 222, 116 S. W.

204, to show that starting the car suddenly or with a jerk is not sufficient to show negligence. In the case referred to and relied on, the court said: "A common carrier of passengers by street car is required to exercise the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended.

"When the cars of street railway companies stop for passengers to alight, it is the duty of their servants to stop long enough for the passengers to alight, and to see that the car does not start again while any one is attempting to alight or exposed to danger. Stopping a reasonable time is not sufficient, but it is the duty of the conductor or those in charge to see and know that no passenger is in the act of alighting or in a dangerous position before putting the car in motion again."

In the instant case it was snowing, the appellee had got on the car and the motorman knew she was walking back to be seated, and with this knowledge starting the car suddenly with a violent jerk before she had reached her seat was sufficient for the jury to find that the motorman was guilty of negligence. His negligence under the evidence and circumstances in this case was a question for the jury.

The court in the case above referred to also stated: "As a general rule, a street railway company is not liable for injuries caused by the starting of its cars, nevertheless it may be liable where the method is unusual and dangerous to passengers."

It is not shown that there was any occasion or reason for starting the car suddenly and with a violent jerk before appellee reached her seat.

Appellant then refers to a number of cases decided by the Massachusetts court, and quotes at length from *Desautels* v. *Mass. N. E. St. Ry. Co.*, 276 Mass. 381, 177 N. E. 578. Quite a number of other cases from the same court are cited, and several of them, including the case of *Desautels* v. *Mass. N. E. St. Ry. Co., supra,* cite the case

of *Gollis* v. *Eastern Mass. St. Ry. Co.*, 254 Mass. 157, 149 N. E. 607. The cases cited by appellant cite this last-mentioned case as laying down the rule relied on by appellant here. The rule there stated is that a common carrier of passengers is not responsible for those sudden jolts or jerks which are the ordinary incidents of travel upon electric cars, and that starting a street car when a passenger is in the act of leaving is not negligence if the passenger is within the body of the car. In other words, the Massachusetts rule supports the contention of the appellant. The case however, relied on as laying down the rule, *Gollis* v. *Eastern Mass. St. Ry. Co.*, *supra*, was by a divided court, the court stating: "In the opinion of a majority of the court there was no evidence to warrant a finding for the plaintiff."

But the rule in this court is wholly different from the rule in Massachusetts. The rule here is, as stated in *Oliver* v. *Ft. Smith Light & Traction Co.*, *supra*, that whether a sudden start is necessary and consistent with the prudent and proper operation of the car will depend upon the circumstances, and whether the evidence and circumstances in the instant case justified a finding for the appellee, was a question for the jury.

We do not deem it necessary to discuss the Massachusetts cases cited by appellant, because the rule here is entirely different. Appellant calls attention to some other cases from other courts, but we will not discuss them for the reason that the rule adopted by those courts does not prevail here.

It is necessary in this State, in order to recover for personal injuries, for the plaintiff to allege and prove that the carrier was guilty of negligence. It is not necessary to allege anything else, and the appellant in this case treated the allegations of the complaint as sufficient, without alleging that the jerk was unnecessary. Moreover, the appellee would not know, and probably could not prove, whether the sudden and violent jerk was necessary or not, and the appellant might operate a car, in order to start which it would be necessary to start it with such a violent jerk as to injure the passengers, but

under the rule in this State, the question is whether the carrier was guilty of negligence which caused the injury to the appellee, while she was herself in the exercise of ordinary care. Of course, if the appellant was guilty of no negligence, there could be no recovery, and, as argued by appellant, every one knows there will be some jerks in the operation of street cars and trains of all kinds.

In the case of *Pasley* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 22, 102 S. W. 387, where suit was brought by the appellant against the appellee for personal injuries while he was a passenger on a freight train, the court said, speaking through Judge RIDDICK: ''Under these facts Mr. Justice BATTLE and myself were first of the opinion that the presiding judge was justified in directing a verdict, but, the other judges having taken a different view, we have reconsidered the matter, and concluded, with them, that, in view of the very short time the plaintiff remained on his feet, the question of whether he was guilty of negligence should have been submitted to a jury.''

''But the railway company owes to the passenger on its freight train the duty to exercise the highest degree of care consistent with the practicable operation of such train to protect the passenger from injury. Failing in exercising that care, the railroad company is guilty of negligence; and, if that negligence is the proximate cause of the injury complained of, it is liable for the damages consequent on such injury. In the case at bar the plaintiff was riding in the caboose of a freight train as a passenger; he was thrown to the floor and severely injured by a sudden jar or jerk of unusual violence; from that testimony it became a question of fact for the jury to determine whether the railroad company did exercise that high degree of care which it owed to the plaintiff to protect him from injury, or whether it was guilty of negligence in causing the injury.'' *St. Louis S. W. Ry. Co.* v. *Jackson,* 93 Ark. 119, 124 S. W. 241; *St. Louis, I. M. & S. R. Co.* v. *Holmes,* 96 Ark. 339, 131 S. W. 692. The rule here is that if a passenger is injured by the

negligent sudden starting of a car, and a passenger is in the exercise of due care, the carrier is liable.

Appellant next urges a reversal on the ground that appellee's instruction No. 4 was erroneous and should not have been given. Its first specific objection is that the instruction exacts too high a degree of care from appellant's motorman. The instruction was to the effect that it was the duty to exercise for the safety of the passenger the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in the operation of street cars for the purpose of carrying passengers in view of the instrumentalities employed and the dangers naturally to be apprehended. This was a correct statement of the law.

The second specific objection to the instruction is the phraseology ''and that the operator, before the plaintiff, after being accepted as a passenger, had a reasonable opportunity in the exercise of usual and ordinary care to become seated, negligently started the car.''

Certainly if the operator negligently started the car before she was seated, and by this negligence caused her injury, the company would be liable, and it was proper to tell the jury that if he negligently did this while she was free from fault herself, the verdict should be for the plaintiff.

Its third specific objection was that it assumes that the facts stated therein would constitute negligence, and therefore invades the province of the jury. We do not agree with appellant in this contention. It not only does not assume that the facts constitute negligence, but that question is by the instruction submitted to the jury.

It is also argued that the instruction assumes that merely because the car started with a sudden or violent jerk, the appellant's motorman failed to exercise the proper degree of care. It not only does not assume this, but also submits this question to the jury. Under the rule adopted by this court, instruction No. 4 was a correct statement of the law.

But it is contended by appellant that, under the doctrine laid down by this court, the instruction was in-

herently wrong, and it cites *Ark. P. & L. Co.* v. *Nuckols,* 182 Ark. 17, 31 S. W. (2d) 415. In that case the instruction which the court held erroneous told the jury that, if the defendant was negligent, the jury should find for the plaintiff without regard to whether the injured person was guilty of contributory negligence, and it was also held to be in conflict with another instruction. The court also in that case held that the appellee was not guilty of contributory negligence as matter of law, but it was a question for determination by the jury.

The next case referred to is *Temple Cotton Oil Co.* v. *Skinner,* 176 Ark. 17, 2 S. W. (2d) 676. The court said in that case that an instruction directing the jury to find a verdict for either party should be complete in itself, and that separate and disconnected instructions, each complete and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole. There is no such question in the instant case as discussed in the Temple Cotton Oil Company case.

The next case it refers to is the *Natural Gas & Fuel Co.* v. *Lyles,* 174 Ark. 146, 294 S. W. 395. In that case the court held an instruction erroneous when it told the jury to find a verdict for the employee, if they found the employer guilty of negligence. That instruction was held erroneous because it ignored the defenses of contributory negligence and assumed risk. We think it has no application here.

The next case cited by appellant is *Garrison Company* v. *Lawson,* 171 Ark. 1122, 287 S. W. 396. This case has no application and does not discuss an instruction like the one in the instant case.

The next case cited is *Newell Contracting Co.* v. *Lindahl,* 181 Ark. 272, 25 S. W. (2d) 1052, and it also cites the case of *Herring* v. *Bollinger,* 181 Ark. 925, 29 S. W. (2d) 696. In the case reported in 181 Ark. on page 272, the court held the instruction erroneous because it told the jury under what conditions they could find the defendant liable, because it did not include contributory negligence. In other words, it is error to tell the jury that if they find the defendant guilty of negligence, with-

out submitting the question of contributory negligence, they can find for the plaintiff. If the jury are instructed in effect to find for the plaintiff, without submitting the question of contributory negligence, the instruction would be erroneous.

In the case of *Herring* v. *Bollinger,* the holding was to the same effect, that ignoring one of the issues in the case and giving conflicting instructions made the instructions erroneous.

We have carefully examined all the instructions and the authorities cited by appellant, and have reached the conclusion that there is no conflict in the instructions, and, taken as a whole, they correctly state the law.

The rule is well established in this State that the carrier of passengers is held to the highest degree of care, prudence and foresight that a prudent man engaged in business as usually conducted would employ, that is, such care, prudence and foresight as can reasonably be exercised consistent with the practicable operation of the road or mode of conveyance used, and the exercise of its business as a carrier, taking into consideration the circumstances and conditions existing at the time and place in question. The degree of care required may vary according to the time and place and circumstances. The carrier is not an insurer of the safety of the passengers, but it is liable for any negligence causing injury to the passenger, while the passenger is himself in the exercise of ordinary care.

It is contended also that the verdict of the jury is excessive. The evidence is in conflict as to the extent of appellee's injuries. The jury may have believed the evidence of appellee's witnesses, and, if so, it was justified in returning the verdict it did. This was a question of fact which was the province of the jury to determine, and as we have many times said, although we might not agree with the jury, yet if there was any substantial evidence to sustain its verdict, we are not authorized to disturb it. In other words, the jury is the judge of the facts, and we cannot substitute our judgment of the facts for the judgment of the jury.

To discuss in detail all the questions raised by appellant and review the authorities cited by it would serve no useful purpose and would unnecessarily extend the opinion.

The original case was tried on May 3, 1933, and the motion for new trial on the ground of newly-discovered evidence was filed in July following. On July 24th the hearing on the motion for new trial on account of newly-discovered evidence was set for trial before the court. The motion for new trial was overruled on October 12, 1933, and an appeal is prosecuted from the order of the court in overruling the motion.

The motion for new trial on the ground of newly-discovered evidence alleged that Ross Powell, the only witness for the plaintiff as to the accident, had sworn falsely at said trial in that he had testified that he was present at the time of the accident and injury complained of by plaintiff, and saw her fall; that he lived about 12 miles from Little Rock, and had driven in an automobile borrowed from a cousin named French, for the purpose of going to Biddle Shops to collect $5 from one Willis Smith, to whom he had loaned said money, and upon his return passed the corner of Ninth and Barber in Little Rock, saw plaintiff board the street car, and saw her fall by reason of a sudden lurch or jerk of the car; that it had not known that Ross Powell would be a witness, because he was not subpoenaed to testify in the case: that after the trial the appellant began an investigation, locating French and his wife in Memphis, Tennessee, and inquired of them, and was informed that they had not loaned Powell a car on December 15th, and that Powell did not have their car at any time on said date; the statements in the motion for new trial were supported by the affidavits of French and his wife; that the defendant then interviewed Willis Smith and learned that he had never borrowed $5 or any other sum from Powell, and he had no appointment with Powell to come to Biddle Shops.

It was further alleged in the motion that Powell was confronted by French and Smith, and had con-

fessed that he had not used the car of French, and had not gone to Biddle Shops to see Smith; that he was present at the time of the accident and saw plaintiff board the street car, and saw her fall to the floor; that he was in an automobile with a lady whose name he declined to reveal; that this lady got out of the car, and he picked up Mrs. Mart and drove her to her home. It was further alleged that Powell admitted that he was interested in the result of the trial, and had been promised a division of the fee of the lawyer for bringing the case to him and testifying as a witness; that he made the arrangement with appellee's attorney, Lewis Rhoton; that his contract was with Mrs. Mart with the approval of Rhoton; he was to get half the lawyer's fee; that Powell further stated that one of the jurors approached him, but he did not know his name, and asked him if he could speak to Mrs. Mart; that Powell told him that she had gone to the hotel with Rhoton and Lookadoo; that this incident occurred after the jury had been instructed and heard the argument, and after it had been dismissed for the night until eight o'clock the next morning. A number of other statements were alleged in the motion to have been made by Powell about who the juror should see, but the motion further says that Powell stated that he saw the accident; that there was a sudden jerk or lurch of the car; that it was one of the old obsolete cars that started with a jump; that the motorman had trouble starting it. It is further alleged that Powell made these statements of his own free will, and had not been offered any money or other consideration, and had not been threatened or intimidated. The statement of Powell was attached to and filed with the motion, as was also the affidavits of other witnesses.

Appellant thereafter filed an amendment to its motion for new trial, alleging that it had used every effort within its power to investigate the accident and injuries, and used due diligence to discover all evidence material to the trial of said cause. The amendment to the motion further alleged that A. R. Bird, who was confined in the Pulaski County Hospital with tuberculosis in its last

stages, had had conversation with Mrs. Mart, and she discussed with him her intention to fall from a street car, and bring suit for damages. Numbers of other statements were made with reference to what appellee had said to Bird in their conversation. This motion was also supported by affidavits.

It is admitted in the amendment to the motion that on April 29th appellant's representatives, having learned about Bird's statement, went to the hospital to interview him, but his condition was such that they were not permitted to interview him on that day.

It is the well-settled rule of this court that a new trial on the ground of newly-discovered evidence will not be granted, unless the applicant has shown reasonable diligence, and whether he has shown such diligence is a question in the sound legal discretion of the trial court, and, unless there is manifestly an abuse of discretion, the finding of the trial court will not be disturbed. *Temple Cotton Oil Co.* v. *Holliday,* 186 Ark. 514, 54 S. W. (2d) 304.

The undisputed evidence in this case shows that appellant learned about what Bird knew on or before April 29th, preceding the trial on May 3rd. It is true they say they could not interview him because of his condition, but the appellant did have knowledge of the facts prior to the trial, and did not ask for any postponement, or to take the deposition of Bird, and we think the trial court was justified in overruling the motion so far as the evidence of Bird is concerned, on the ground that the appellant had not used reasonable diligence.

As to the other grounds for new trial on newly-discovered evidence, no question of diligence is involved, because under the evidence in this case the appellant did not know of the facts which it set up in its motion until after the trial. It did not know that Powell was going to testify and certainly could not have known what his testimony would be. It appears that Powell made a statement in which he said he was interested in the result of the lawsuit; that he was to get half the lawyer's fees, and that he did not go to Biddle Shops in French's car, and did not collect $5 from Willis Smith. Powell

contends that he was drunk when he made the statement. The preponderance of the evidence, however, shows that at the time he made the first statement, he was not drunk. But the statement that he was to get half of the lawyer's fees, together with the statement that he wanted to settle the case for $1,000, so that he could get $250, is not supported by the evidence. The evidence is overwhelming that his statement, which it is alleged he made, that there was a frameup, and that he was to get half the lawyer's fee, is untrue. He admitted in his evidence on the motion for new trial, that he did not go to Biddle Shops in French's car, and that Willis Smith was not the Smith that he collected the $5 from, but he insisted that he did collect $5 from another Smith, who worked at the Biddle Shops. He explained his statement about going in French's car by saying that at the time he testified it did not occur to him that it was material, and he had ridden in French's car many times. But, as a matter of truth, on the night of the accident, he was in a different car, a car belonging to the woman with whom he was driving, and he declined to say who the woman was.

The most that can be said about this newly-discovered evidence is that it discredited and impeached Powell. It is not claimed that he, at any time, made any statements about the accident in conflict with his testimony at the trial of the case.

The rule with reference to granting a new trial on newly-discovered evidence is stated in R. C. L. as follows: ''In order to warrant the granting of a new trial on the ground of newly-discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative or impeaching. Therefore it becomes necessary for the court to take into consideration the weight and importance of the new evidence, its bearing in connection with the evidence on the former

trial, and even the credibility of the witnesses." 20 R. C. L. 290-291.

As to whether a new trial should be granted on the ground of newly-discovered evidence, is in the discretion of the trial court. "Newly-discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial is, in the discretion of the court, ground for a new trial, which has been granted in numerous cases. But a case where a showing made requires a new trial is unusual, and applications for new trials for this cause are not favored, especially where the alleged newly-discovered evidence consists largely of conclusions and hearsay. To warrant a new trial, it must appear that evidence is in fact newly-discovered, and not merely the importance of it; and a new trial will be denied if the court is not satisfied that the alleged newly-discovered evidence really exists. A new trial for newly-discovered evidence will be granted only where manifest injustice and wrong appear, and there is no other relief obtainable; in determining whether a new trial shall be granted on the ground of newly-discovered evidence, courts, while keeping within well established legal limits, endeavor to do what the interest of truth and justice requires." 46 C. J. 243.

"This court has many times held that motions for new trial on account of newly-discovered evidence are addressed to the sound discretion of the trial court, and that this court will not reverse for failure to grant unless an abuse of such discretion is shown." *Forsgren* v. *Massey,* 185 Ark. 90, 46 S. W. (2d) 20.

"Moreover, the testimony of Johnson and his wife on the matter set out in their affidavits was in the nature of impeaching testimony of the Smiths; and it has been held by this court that newly-discovered evidence which goes only to impeach or discredit a witness is not ground for a new trial." *Bradley Lbr. Co.* v. *Beasley,* 160 Ark. 622, 255 S. W. 18; *Freeo Valley Rd. Co.* v. *Rowland,* 164 Ark. 613, 262 S. W. 660.

The granting of new trials on the ground of newly-discovered evidence is always within the discretion of the trial court. *Banks* v. *State,* 133 Ark. 169, 202 S. W. 43; *Hinkle* v. *Laseter,* 142 Ark. 223, 218 S. W. 825. We are of opinion that the trial court did not abuse its discretion in overruling the motion for new trial, and the judgments of the circuit court are affirmed.

SMITH and BUTLER, JJ., dissent.

BUTLER, J., (dissenting). I base my dissent principally upon what I conceive to be error committed in overruling the appellant's objection to appellee's instruction No. 4 and in giving said instruction. That instruction, after telling the jury that it was the duty of the appellant to exercise for the safety of the passenger the highest degree of skill and care, continuing, was couched in the following language: ''Therefore, if you find from the preponderance of the testimony in this case, that the plaintiff was a passenger upon one of the defendant's cars and, was herself free from fault or negligence, and that she was injured by reason of the failure of the defendant's operator of the car to exercise for her safety that degree of care above stated, and that the operator, before the plaintiff, after being accepted as a passenger had a reasonable opportunity, in the exercise of usual and ordinary care, to become seated, negligently started the car with such a sudden and violent jerk as to throw, and did throw her to and upon the floor of the car, and that she was thereby injured, she at the time being free from fault or negligence, upon her part, your verdict should be for the plaintiff.''

A number of objections are raised to this instruction which perhaps might have been cured by instructions given at appellant's request, but that part of the instruction, *i. e.,* ''and that the operator before the plaintiff, after being accepted as a passenger had a reasonable opportunity in the exercise of usual and ordinary care to become seated, etc.,'' was not cured by any subsequent instruction and, in my opinion, was a clear intimation to the jury that the sudden and violent starting of the car

before the appellee had an opportunity to take her seat was negligence.

The authorities relied upon by the appellee to sustain the instruction go no further than to hold that it is the duty of the operator of a car not to start the same until the passenger has taken a safe position. The instruction goes further and would require the motorman not to suddenly start his car as long as a passenger had not had an opportunity to be seated after having entered the car. This certainly is not the law. The most that could be said of the fact that the car was started before the passenger had time to be seated is that this would be a proper matter of argument on the question of whether it was negligence to suddenly start the car.

The appellant made a specific objection to the language singled out in the instruction and quoted above. If there was no other vice in the instruction, it was erroneous in singling out a particular class of testimony and in directing the jury to consider it and calling it especially to their attention. We have frequently held that it was not error to refuse such an instruction. *Western Coal & Mining Co.* v. *Jones*, 75 Ark. 76, 87 S. W. 440; *Jenkins* v. *Quick*, 105 Ark. 467, 151 S. W. 1021; *Scott* v. *State*, 109 Ark. 391, 159 S. W. 1095. So, where such an instruction is given, the error whereof is pointed out in a particular way, it is error to give the same with the objectionable language retained.