FREEO VALLEY RAILROAD COMPANY *v.* ROWLAND.

Opinion delivered June 9, 1924.

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION.—Much discretion is vested in the trial court in granting a new trial where, after the trial, a witness recants his testimony given at the trial.

2. NEW TRIAL—RECANTATION OF TESTIMONY—EFFECT.—It was not an abuse of discretion to refuse a motion for new trial upon the ground that one of the adversary's witnesses recanted his testimony where other testimony was ample to sustain the jury's verdict.

Appeal from Ouachita Circuit Court; *L. S. Britt,* Judge; affirmed.

*G. Otis Bogle, Gaughan & Sifford* and *E. E. Godwin*, for appellant.

House, whose testimony was the foundation stone of the plaintiff's case, he being the only disinterested witness who testified in her behalf, testified falsely at the trial, and afterwards repudiated that testimony and confessed its falsity. We think the jury's verdict was based on that testimony; at least there is a probability that it was based thereon. The fact that he repudiated it raises such a doubt that, under the law, the verdict should have been set aside, and a new trial awarded. 72 Misc. 479, 131 N. Y. Supp. 340; 69 Ark. 545; 74 Kan. 631, 87 Pac. 738; 103 Ind. 142; 2 N. E. 349; 11 Tex. App. 283; 34 Misc. 396, 69 N. Y. Supp. 655; 107 Ark. 498.

*D. D. Glover, Powell, Smead & Knox* and *Smead & Meek,* for appellee.

It is well settled that a judgment will not be disturbed on account of the retraction of testimony by a witness, if such testimony is cumulative of other testimony, and there is other evidence to sustain the verdict. 69 Ark. 545; 111 Ark. 399; 86 Ark. 481; 143 Ark. 523; 96 Ark. 400; 161 Ark. 345.

HART, J. Mrs. Mattie Rowland sued the Freeo Valley Railroad Company to recover damages for injuries sustained by her while attempting to board one of the defendant's passenger trains.

Mrs. Mattie Rowland was a witness for herself, and lived at Eaglette, Arkansas, in June, 1919. The defendant has a line of railroad which runs through Eaglette and Richardson Crossing, Arkansas. On the 9th day of June, 1919, Mrs. Mattie Rowland went from Eaglette to Richardson Crossing on one of the defendant's passenger trains, to visit her son, who was sick. She was accompanied by her three children, Viola, Jesse, and Mattie. Between seven and eight o'clock on the morning of June 10 inst. she flagged the train for the purpose of taking passage on it for home. When the train stopped, her oldest daughter first got on it. Her two smaller children had got on the steps of the white passenger

coach, when her little boy commenced to cough. A lady in the car said to the conductor, "Whooping-cough; don't let them come in here." The conductor then told the plaintiff to stop, and asked her if her children had the whooping-cough. She told him that her little boy did not have it; that he had had it about four years ago; but the baby had been exposed to it. The conductor then told her that they could not ride on the train. He signaled the engineer to start the train, and the engine was started before Mrs. Rowland had time to get the children off of the train. She had hold of the handle-bars, trying to get the children off, when the train started. She had one foot on the ground and the other on the foot-stool placed there for passengers. When the train started the conductor told the children to jump off, and the little boy of the plaintiff jumped and fell between her and the train. She reached out her left hand and swung him out of the way. The train gave another lunge forward, which seemed harder and faster than before, which prevented her from getting on the steps to keep the other two children from jumping off and falling under the train. She could not get on, and the train jerked her down on the ties and rendered her unconscious. The conductor then took her around the end of the train, through the negro coach, into the baggage-car, and she rode there until she reached her home. When the train arrived at Eaglette the plaintiff was jerking so that she could hardly get off of the train. She went from the station home, and immediately went to bed. She suffered violent pain for some time, and has not been able to walk any since that time. The accident happened on the 10th day of June, 1919, and her testimony, as stated above, was given on the 27th day of April, 1923. At the time of the accident her youngest child was three years and eight months old. After the plaintiff was thrown to the ground, the conductor grabbed her youngest child off of the steps, and her daughter, Viola, jumped off of the train. She paid her fare on the train the morning she

was injured. She has suffered continuously since that time, and.has not been able to walk since she received her injuries, and is carried about in a wheel-chair.

Viola Carroll was also a witness for the plaintiff, and testified that the injury happened in the way stated by her mother. She testified in detail about the train starting with a jerk and pulling her mother down violently on the ties. Her mother at the time had her hand on one of the bars of the steps, trying to hold her baby on the steps. She also corroborated the testimony of her mother as to the character and extent of her injuries.

Will House was another witness for the plaintiff. According to his testimony, he was a passenger on the train, and saw the accident. He corroborated the plaintiff's testimony as to the manner in which she received her injuries. House testified that the conductor refused to let the plaintiff come on the train because some of the passengers heard one of her children cough, and thought it had whooping-cough. The conductor signaled the engineer to start the train, and, when it moved, the plaintiff was knocked to her knees, and fell on the cross-ties. House further testified that one of the attorneys for the plaintiff was representing him in a claim he had against a lumber company, and that he heard the attorney speaking about Mrs. Rowland's case to the county judge of his county, and he then told the attorney that he was on the train and saw the accident. The attorney then asked him to state how it occurred, and he told him. He had never heard the statement of how the injury to the plaintiff occurred until after he had made the statement in the presence of her attorney and the county judge.

A physician testified as to the character and extent of the injuries of the plaintiff. He testified that, in his opinion, Mrs. Rowland would never be able to stand or walk again. She was forty-eight years old at the time she received her injuries, and, according to her testi-

mony, which was corroborated by others, she was a stout, able-bodied woman.

Other witnesses corroborated her testimony as to the severe pain she suffered for eleven days immediately after she received her injuries.

The conductor and engineer of the train were witnesses for the defendant. Each one admitted that Mrs. Rowland was a passenger on the train on the day in question, and that she rode in the baggage-car because one of her children had the whooping-cough. Each witness denied that the train was started suddenly on that occasion, or that Mrs. Rowland was in any wise injured.

Three other witnesses testified that they were passengers on the train on the day in question, and that Mrs. Rowland was not in any manner injured by the train starting up. They denied that the train started suddenly on that occasion, and denied that Will House was a passenger on the train.

The jury returned a verdict for the plaintiff in the sum of $12,500, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

The sole reliance of counsel for the defendant for a new trial is on the ground of newly discovered evidence in the nature of a disavowal by Will House of the testimony he had given at the trial. In support of their motion for a new trial, counsel for the defendant submitted a sworn affidavit of Will House to the effect that his testimony given at the trial was not true, and that he was not a passenger on the defendant's train on the day in question. He said that he was persuaded by one of the attorneys for the plaintiff to give the testimony, and that he believed that he testified falsely at the trial of the case through ignorance. He stated further that he was making the retraction freely and voluntarily, and that he was telling the truth in the affidavit.

The plaintiff filed a response to the motion for a new trial of the defendant, which was accompanied by the affidavits of D. D. Glover, C. F. Berry, and D. M. Halbert.

According to the affidavit of D. D. Glover, he was sitting in his office, talking to C. F. Berry, the county judge of Hot Spring County, when Will House came into the office and sat down. He was telling Judge Berry of his trip to see Mrs. Rowland, and that she was hurt getting on a train at Richardson Crossing. Will House then said that he was on the train the day she was hurt. Glover then asked House to tell him and Judge Berry how it occurred. He said that, when the train stopped at Richardson Crossing, some child outside of the car coughed, and a woman in the car said not to let the whooping-cough into the car. He, looking out the window, saw a woman holding to one of the handle-bars of the car and being dragged along by the train. Her hold was turned loose, and she fell across some ties on her side and back. Glover stated further that the statement of House that he persuaded him to make the statement relative to Mrs. Rowland's injuries is absolutely and maliciously false.

The affiant further stated that, after he was notified by his co-counsel that they had been informed that House had made an affidavit retracting his testimony given in the case, he immediately took the husband of the plaintiff and D. M. Halbert with him in a car and drove to different places in search of House, but was unable to find him.

D. M. Halbert corroborated the testimony of Glover in his attempt to locate Will House. He told in detail the different places they went in search of House, and of their failure to find him.

Judge C. F. Berry in his affidavit corroborated the testimony of D. D. Glover about Will House coming into the latter's office and telling about how the injury occurred. Judge Berry told of the occurrence in detail, and his testimony explicitly corroborated that of Glover on this point.

The law on the subject of granting a new trial on account of the disavowal or recantation by a witness is

thoroughly reviewed and discussed in *Little* v. *State,* 161
Ark. 245.

It was the duty of the trial judge who saw and heard
the witnesses to weigh the facts and determine where
the clear weight of the evidence lay.  His position gave
him all the opportunities for forming an opinion of the
credibility of the witnesses that the jury possessed, and,
in addition to this, he had before him the conflicting
evidence presented upon the motion for a new trial.  In
the fulfillment of his duty in this respect he has decided
that the verdict of the jury was right, and ought to be
permitted to stand.  Much discretion is left with the trial
court in granting applications of this sort, and great
weight should attach to his opinion upon the evidence in
a motion of this character.

On the one hand it is pointed out that, to grant a
new trial in cases of this sort, would give the losing party
another chance with the jury, and would open the doors
for the introduction of perjury and thereby "poison the
wells of justice."

On the other hand it is pointed out that truth will
ultimately prevail, and that the guilty person must
answer for perjury, and that the granting of a new
trial will promote justice and prove more satisfactory
in general.

As above stated, the trial judge decided that a new
trial should not be granted.  He heard the witnesses
testify at the trial and examined the affidavits on each
side in the application for a new trial.  In making his
finding, he doubtless recognized that Will House was a
confessed perjurer, and that his testimony was not
entitled to any weight before the jury.  House gives no
reason whatever for testifying falsely at the trial, except
that one of the attorneys for the plaintiff persuaded him
to do it.  The attorney whom he accuses filed an affidavit
in which he stated that the witness had testified falsely
in this respect.  The attorney was corroborated by the
testimony of Judge Berry, who happened to be present

at the time the witness made his statement about the case. House had not been solicited to make a statement of the matter, and Glover did not know that he was a passenger on the train until he told him so and told how the accident happened. According to the testimony of Judge Berry and of Glover, House made his statement about the accident before he had heard any statement about it.

Glover made a diligent search for House, and was unable to find him, after he made his affidavit disavowing his former testimony. Mrs. Rowland and her daughter Viola made a plain case for her, and, while their testimony was contradicted by five witnesses, still the trial judge might have found that they were corroborated by the attending circumstances, and that, eliminating the testimony of House as being unworthy of belief, the weight of the evidence was not against the verdict of the jury.

The trial was not had until nearly four years after the accident happened. During all of this time the plaintiff suffered constant pain, and had to be carried about in a wheel-chair. A physician who examined her testified that she would never be able to walk again. She was a stout, able-bodied woman before the accident happened. This tended to show that plaintiff was severely and permanently injured in some way. These circumstances might be considered by the trial judge in testing the credibility of the witnesses in deciding whether a new trial should be granted. The evidence given upon the trial, without the testimony of Will House, was ample to justify the verdict of the jury, and it cannot be said that the trial judge has abused his discretion in refusing to grant a new trial.

It follows that the judgment must be affirmed.