MANGRUM v. BENTON.

4-4806

Opinion delivered November 15, 1937.

*J. C. Young* and *Eugene Sloan,* for appellants.

*H. L. Methvin* and *J. G. Waskom,* for appellees.

BAKER, J. Fred Mangrum was appointed administrator of the estate of Jake Pfeifer, deceased. At the time of his appointment he named several parties, appellants here, as the only heirs at law of the said Jacob Pfeifer. Within due time thereafter, on September 1, 1936, Thelma Benton filed a petition in the probate court alleging that she was the daughter and only heir of Jacob Pfeifer.

Upon a hearing had in the probate court on November 2, 1936, Thelma Benton's petition was dismissed. She prayed an appeal to the circuit court. Upon this appeal, before the court sitting as a jury, the court found that Thelma Benton was the daughter of Jacob Pfeifer, born in wedlock and, therefore, entitled to inherit his estate. It is from this judgment of the circuit court that this appeal comes. Appellants say that the question to be determined upon this appeal is whether Thelma Benton is the child of Jacob Pfeifer, and that no other question presents itself except in an incidental manner.

Since the circuit court has already determined this particular question, the matter presented for our consideration necessarily is to determine whether the circuit court decided the case upon substantial testimony when that testimony is considered in the light most favorable to the appellee. Strong and forceful arguments are made which, if we were trying the case anew, would be entirely proper. The court's finding of fact does have the same effect as the verdict of the jury. See *Bridges* v. *Shapleigh Hardware Co.,* 186 Ark. 993, 998, 57 S. W. (2d) 405. The authorities there cited are conclusive.

The appellants contend that, although the mother of Thelma Benton was undivorced from Jacob Pfeifer at the time Thelma, her daughter, was born, she was living apart from her husband and at the period when, in the natural course of nature, said child might have been begotten she was then residing with Berry Mangrum at a point about 200 miles distant in the state of Tennessee, and that, on that account, we should find that it was not

possible for Pfeifer to have been the father of this child. Several witnesses testified in support of that contention presented by the appellants and their testimony was such that, if it had been found to be true by the court, it must be said that the testimony was substantial and would have supported the court's findings. There is no reason for a statement of this testimony further than to say that their contention was that during the months of October, November, December, January and February, prior to the birth of this child, in August, her mother, then Hattie Pfeifer, was living with L. B. Mangrum, at the home of a Mr. Hill, who then resided in Tennessee. A daughter of Hill's testified to that effect and other witnesses gave substantially the same testimony. In contradiction of that testimony, however, Hattie, the mother of Thelma Benton, testified that during this particular time she was living with Jacob Pfeifer and in his home, that she had not separated from him. A sister of hers testified to the same effect. William Craddock, a citizen well known in Craighead county and whose word would be taken by anyone who knows him, gave his recollection by saying substantially: "It runs in my mind that Mangrum at the particular time was still residing in the Mangrum neighborhood and looking after one of my farms." Hill, the man at whose home Mangrum and the mother of the child were said to have lived, denied that Mangrum had lived in his home with this woman or any other woman. There was other testimony offered by the parties unnecessary to quote or set out.

It must be said that the testimony offered by the appellants was in hopeless conflict with that offered by the appellees. The trial court determined the facts as such, and not from an archaic presumption, and we are bound by that determination since it is supported by substantial testimony.

After the trial the appellants filed a motion for a new trial, and, among other things, they set up newly discovered testimony. To establish the fact that they had newly-discovered evidence, they brought witnesses before the court, some of whom came from Tennessee and who were former neighbors of Hill when he resided there.

These witnesses, whose testimony was not presented by affidavit attached to the motion for new trial, as would have been perhaps the better practice, came before the court and without objection testified. They were there examined and cross-examined, and it appears to us that the effect of this proceeding was really such as to give to the appellants a new trial upon this evidence. The court, after hearing this testimony, announced his conclusions as being unchanged. The court need not have heard this testimony as presented by bringing witnesses into court. The law under which appellants were presenting their motion is § 1536, 7th subdivision, Pope's Digest. This court has held that the newly-discovered evidence must or should be presented by affidavits, that is, affidavits stating the substance of what the party expects to prove. *Jones* v. *Gaines,* 92 Ark. 519, 521, 123 S. W. 667.

No point, however, is made by the appellees on this manner of presentation, and the court did not overrule the motion by reason of any informality or irregularity in the matter of proceedings, the result being in effect to give the appellants another trial upon this issue by re-opening the case to that extent.

The whole law of this case as presented upon appeal is determined by a finding which is also an admission on the part of the appellants that the trial court's judgment is supported by substantial evidence. True, appellants argue we should not believe this testimony. If we did not believe it, in this case at law, the result would be the same, for we may not, as in matters in equity, try the case *de novo.*

There being no error, the judgment is affirmed.