Ronald TURNEY *v.*
ALREAD PUBLIC SCHOOLS

84-107                                        677 S.W.2d 299

Supreme Court of Arkansas
Opinion delivered October 15, 1984

*Cearley, Mitchell & Roachell,* by; *Richard W. Roachell* and *Clayton Blackstock,* for appellant.

*G. Ross Smith, P.A.,* for appellee.

GEORGE ROSE SMITH, Justice. The circuit court denied the appellant Turney's motion to vacate its former judgment and grant a new trial for newly discovered evidence. The case comes to us as a second appeal in the same litigation. Rule 29 (1) (j).

For several years Turney was employed by the Alread School District as an uncertified provisional teacher. Finally, before the 1982-83 school year, the school board terminated Turney's contract because he had failed to achieve full certification and was keeping the district from obtaining an "A" rating. The board's action was affirmed by the circuit court and by this court. *Turney* v. *Alread Public Schools,* 282 Ark. 84, 666 S.W.2d 687 (1984).

Before that appeal was decided, Turney filed the present motion in the circuit court, asking the court to vacate its judgment for newly discovered evidence. It was asserted that the school board had not acted fairly and impartially, thus denying Turney due process of law, in that the board had been "primarily concerned with [Turney's] alleged relationships with female students." The motion relied upon the expected testimony of the district's former superintendent, Charles Faulkner, to prove that "the board had already made up its mind to get rid of [Turney] because of rumors in the community that he had improper relationships with female students in the school district." No charge of that kind was made when Turney was terminated.

Faulkner, the former superintendent was the only witness to testify at the circuit court hearing on Turney's motion. Since Turney's present appeal rests solely on Faulkner's testimony, we narrate it in some detail.

Faulkner was employed by the district about the first of July, 1982, six weeks before Turney was discharged on August 18. Faulkner testified at the first circuit court hearing that he attended two board meetings during that time. He testified at the second hearing, now on review, that the board members talked about rumors that Turney was shacked up with a woman and that he had had high school girls sit on his knee or his lap in the library. Faulkner could not say which of the five board members made any particular statement, except that when he went to Mr. Goodman's house to report what he had found out about Turney's attending school to complete his certification, Goodman said: "I hope we can find some reason to get rid of that bastard." That remark apparently arose from Turney's lack of certification, not from Turney's misconduct. Rather to the contrary, Faulkner testified at the second hearing with respect to those rumors:

> I questioned them [the board members] about that and asked if anything was done about it. And they said, well, he's — we — we had a session and talked with him about it, and he had an attorney there. And I said, where are the — what minutes would that be in? And they were never able to tell me if there were minutes — obviously no minutes were made of that board meeting.

Faulkner conceded that he had twice testified under oath — once before the school board and once in the circuit court — that Turney was fired because he failed to obtain his certification as a teacher, as he had promised to do. Faulkner explained that testimony by saying in effect that as superintendent he wanted the district to get an "A" rating and that Turney's status stood in the way. Faulker said that after he himself had been fired after only one year's employment, he decided, "reflecting back," that Turney's lack of certification had been used by the board as a ruse for firing him.

Our original statute allowing new trials for newly discovered evidence was concerned primarily with cases tried before a jury; in chancery the remedy was by a bill of

review. Hence, since the jury was the trier of the facts, the statute contemplated that the motion would be heard only on affidavits. *Mangrum v. Benton,* 194 Ark. 1007, 109 S.W. 2d 1250 (1937). In that case, however, as in the present case, the parties seeking the new trial were permitted to elicit the testimony of their witnesses in open court, which led us to remark that "it appears to us that the effect of this proceeding was really such as to give to the appellants a new trial upon this evidence." In the same way, Turney has proffered the testimony of his only witness, ex-superintendent Faulkner, and in effect has been given a new hearing by the circuit court.

We have said with respect to a motion for new trial for newly discovered evidence: "Much discretion is left with the trial court in granting applications of this sort, and great weight should attach to his opinion upon the evidence in a motion of this character." *Freeo Valley R.R. v. Rowland,* 164 Ark. 613, 262 S.W. 660 (1924). Tested by that standard, this record does not indicate an abuse of the trial court's discretion. Faulkner's testimony is essentially contrary to his sworn statements at two earlier hearings. He admittedly did not attend the meeting at which the board decided to terminate Turney's employment. He has no first-hand information about the reasons for their actions. It was not until more than a year after that meeting, and after he himself had been fired, that Faulkner reflected back and concluded that Turney had been terminated on a pretext. He says he was new in the superintendent's job and implies that in those circumstances he recommended that Turney be terminated. At the same time, however, he would have the court believe that during those same early weeks he also cross-examined the board members about their treatment of Turney and in effect demanded that they show him written confirmation of their asserted meeting with Turney and his attorney. The trial judge, who observed Faulkner as he testified under oath on two occasions, apparently attached no persuasive weight to his second version of the matter. We cannot say that the court's decision was wrong.

Affirmed.

HICKMAN J., concurs because Turney was a provisional teacher.

HOLLINGSWORTH, J., dissents.

P.A. HOLLINGSWORTH, Justice, dissenting. This is the second appeal we have heard in this cause. The issue in the first appeal was whether the trial court erred in finding a rational basis for the termination. We said in our opinion, "In light of the school board's attempt to raise the accreditation of its high school and appellant's failure to meet the requirement that he obtain twelve hours in the summer of 1982, we cannot say the trial court clearly erred in finding a rational basis for appellant's discharge." *Turney* v. *Alread Public Schools,* 282 Ark. 84, 666 S.W.2d 687 (1984).

The basis for this appeal is provided by the superintendent at the time of Turney's termination. He testified at the second hearing, now on review, that the board members talked about rumors that Turney was involved in acts of moral turpitude rather than his lack of certification. Turney requests that we grant a new trial because he was denied his right to a fair and impartial hearing under the due process clause of the federal Constitution. I agree and dissent from the Court's decision today.

It is not contested that one of the board members stated prior to the hearing on Turney's termination, "I hope we can find some reason to get rid of that bastard." The Court holds that remark apparently arose from Turney's lack of certification, not from his alleged misconduct. I disagree. There are no circumstances present here that require a board member to make a derogatory statement about an employee's ancestry if the issue is really qualifications. There appears to be confusion to be perpetuated in future opinions, the importance of due process should be reexamined. Due process assures reasoned decision making by forcing school board members to articulate the bases of their employment decisions. It provides a forum for facts and the inferences to be drawn from those facts, thereby allowing discovery of any

erroneous basis for the decision. The procedure also allows the affected teacher to rebut erroneous information and put forth his side of the facts.

Turney alleges that there is a basis for believing that the board members based the nonrenewal of his contract on charges that he was guilty of immorality. If this is the case, due process would afford an opportunity for Turney to refute the charge before the school board and clear his name. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (citations omitted). *Board of Regents* v. *Roth*, 408 U.S. 564 (1972).

I respectfully dissent for these reasons.